UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ZEKI KOCHISARLI,

                Plaintiff,

      - against -

HAROLD J. TENOSO a/k/a HAL, ALAN
MORRISON HAY, FRANCES GRIFFIN,
FMB HOLDINGS LLC,

                Defendants.
----------------------------------X
FRANCES GRIFFIN and FMB HOLDINGS
LLC,

                Counter-claimants,

      - against -

ZEKI KOCHISARLI,

                Counter-defendant.
----------------------------------X

**MEMORANDUM & ORDER**
02-CV-4320 (DRH) (MLO)

**APPEARANCES:**

**QUADRINO & SCHWARTZ, P.C.**
Attorneys for Kochisarli
666 Old Country Road, 9th Floor
Garden City, NY 11530
By: Harold J. Levy, Esq.

**BOOKER, RABINOWITZ, TRENK, LUBETKIN, TULLY, DiPASQUALE & WEBSTER, P.C.**
Attorneys for Tenoso
100 Executive Drive, Suite 100
West Orange, NY 07052
By: Richard D. Trenk, Esq., & Henry M. Karwowski, Esq.

**DEAN BROWNING WEBB, ESQ.**
8002 N.E. Highway 99, Suite B - PMB # 256
Vancouver, WA 98665-8833

**HURLEY, Senior District Judge**:

## *INTRODUCTION*

Presently before this Court is a motion by Dean Browning Webb, Esq. for reconsideration of this Court's Memorandum and Order, dated March 21, 2006, insofar as it granted Plaintiff's motion for Rule 11 sanctions against Mr. Webb. Also before the Court are the submissions of the parties pursuant to the aforementioned Memorandum and Order regarding the amount of the sanctions.

## *BACKGROUND*

The factual background of this case has been previously set forth in the multiple Memoranda and Orders entered herein and will not be repeated except to the extent necessary for the determination of the matters at hand.

Plaintiff commenced this action on June 27, 2002. Defendants/Counter-claimants Hay, Griffin and FMB Holdings LLC ("Counter-claimants") filed a counterclaim on December 6, 2002. On March 11, 2004, this Court held the counterclaims to be "neither short nor plain," and in some places, "indecipherable," such that "the administration of this case — including the disposition of likely pretrial/trial motions directed at the counterclaims — is almost surely destined to be unnecessarily complex, producing concomitant delays." The Court instructed Counter-claimants to reformat and resubmit their pleadings, along with a RICO statement. An Amended Counterclaim (ACC) was submitted. On March 24, 2005, the Court dismissed, without prejudice, Counter-claimants' ACC because it was again "indecipherable." The Court detailed precisely how Counter-

claimants should endeavor to frame their Second Amended Counterclaims ("SACC"), and explicitly stated that "any further failure to abide by this Court's orders, instructions, and deadlines shall result in the dismissal of any and all of counterclaims by Hay, Griffin, and/or FMB Holdings, LLC with prejudice." (March 24, 2005 Order at 7.) On May 13, 2005, Counter-claimants submitted their Second Amended Counterclaims ("SACC").

In its March 21, 2006 Memorandum & Order, this Court addressed Counter-claimants' third attempt to submit an adequate set of counterclaims and once again found them deficient:

> In response to Plaintiff's motion [to dismiss the counterclaims], Counter-claimants submit a brief of pure rhetoric. Instead of addressing Plaintiff's arguments regarding the counterclaims, Counter-claimants instead declare, "The *mise en scene* of these proceedings emanates from a background of Machiavellian intrigue, cunning deception, and sensational double *entendre*. Essentially, it is a text book example of myopic greed and clandestine chicanery designed and intended to conceal from respondents' knowledge a pre-existing business relationship between the movant and others . . . ." (*See* Def. FMB's Opp'n to Mot. to Dismiss at 1-2.) Counter-claimants then cite to a vast array of cases and treatises, but barely address the content of their counterclaims or Plaintiff's arguments in support of his motion to dismiss. Because the relevance of Counter-claimants' arguments is an open question, it is difficult to have a serious discussion of Counter-claimants' legal arguments here.
> . . .With the SACC, Counter-claimants have again failed to address the Court's concerns. In the March 24 Order, the Court dismissed the AC without prejudice but issued an exhaustive list of directions, clearly articulating to Counter-claimants how a subsequent submission of counterclaims could pass muster. Counter-claimants entirely ignored the Court's instruction.
> 
> The SACC is, in fact, more difficult to parse than the AC. Though the formatting is new and easier to read, the content is essentially identical, with one major change: the deletion of nearly forty paragraphs. The Court did not criticize Counter-claimants'

> prior attempts as being too long. Rather, the court was critical of counter-claimants for raising broad legal claims without any bases in the factual allegations. That failing is unchanged.

The Court went on to detail some of the failings. For example, the SACC "alleges twenty two RICO 'persons' but provides no biographical information as to any of these individuals . . . . Individuals appear in the SACC and disappear almost as quickly." The Court then stated, :

> Another omission from the SACC is the required RICO statement. The Court specifically ordered Counter-claimants to provide a RICO statement along with their SACC. . . . Counter-claimants did not do so. As a result, the third set of counterclaims lack the very thing that the March 24 Order demanded.

The Court then concluded its discussion of the motion to dismiss as follows:

> At the close of the March 24 Order, the Court warned Counter-claimants that "any further failure to abide by this Court's orders, instructions, and deadlines shall result in the dismissal of any and all of counterclaims by [Counter-claimants] with prejudice. . . ." That time has come. Counter-claimants have completely disregarded this Court's instructions and have submitted, for a third time, a completely unacceptable set of counterclaims. The SACC remains indecipherable and Counter-claimants' brief retains the proscribed rhetorical flourishes and refuses to address the issues germane to the Court's concerns.

March 21, 2006 Order at 13 -14 (footnote omitted).

This Court then turned to the motion for Rule 11 sanctions and found sanctions should be imposed. The first factor discussed by the Court was the willfulness of the improper conduct::

> [T]he improper conduct was willful. *The SACC clearly had absolutely no chance of success because the Court informed Mr. Webb in its previous orders that the indecipherable pleadings were entirely inadequate. Furthermore, Mr. Webb's conduct was "objectively unreasonable" to the extent that the Court dictated the content and organization necessary for the SACC to have any merit, and Mr. Webb submitted the SACC with complete disregard*

-4-

> *for the Court's order. By submitting essentially the same indecipherable set of counterclaims for a third time, in direct defiance of two explicit orders from this Court, Mr. Webb was "harass[ing] or . . . caus[ing] unnecessary delay or needless increase in the cost of litigation."  Rule 11(b)(1).*

March 21, 2006 Order at 16 (emphasis added). Other relevant factors were considered as well. The Court found Mr. Webb had participated in similar conduct in other suits, the filing of the SACC delayed the proceeding and caused Plaintiff and this Court to engage in unnecessary research and Mr. Webb is educated in the law. Accordingly, the Court concluded sanctions were appropriate against Mr Webb and directed Plaintiff to submit in detail the attorneys' fees and costs it incurred in the preparation of its September 14, 2005 Motion to Dismiss counterclaims, including the memorandum of law and reply memorandum.

Mr. Webb has moved for "Relief from Order Pursuant to FRCP 60(b)" and/or "Reconsideration" of the March 21, 2006 Order only insofar as it imposed sanctions against him.[1] Mr. Webb argues that the motion should be granted because in fact a RICO statement was filed and the SACC was not essentially the same as the ACC.

### DISCUSSION

*I. Standard for Motion for Reconsideration*

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the

---

[1] Mr. Webb is no longer attorney of record in this action. *See* Order dated June 13, 2006.

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

## II. *Application to the Present Case*

As the Court erroneously stated in its March 21, 2006 Memorandum and Order that a RICO statement had not been filed, reconsideration is appropriate. Upon reconsideration, the Court adheres to its earlier decision imposing sanctions.

The failure to file the RICO statement formed only a part of this Court's decision to impose sanctions. As the above discussion demonstrates, the imposition of Rule 11 sanctions was warranted because "[b]y submitting essentially the same indecipherable set of counterclaims for a third time, in direct defiance of two explicit orders from this Court, Mr Webb was harassing or causing unnecessary delay or needless increase in the cost of litigation." March 21, 2006 Order at 16. In other words, it was the submission of the SACC, a pleading essentially

unchanged from its predecessor, and a brief that failed to discuss the relevant issues that warranted the imposition of sanctions. Most importantly, this Court found that the SACC itself did not comport with this Court's prior directives. Compounding the problem was the submission of a brief of "pure rhetoric" that did not address the contents of the counterclaim or Plaintiff's argument in support of the motion to dismiss. As detailed in the March 21, 2006 Order, consideration of the factors to be taken into account when determining whether to impose sanctions clearly compelled the imposition of sanctions in this case.

In his motion for reconsideration, Mr. Webb maintains "that the second amended counterclaim, read in conjunction with the RICO case statement, addresses and satisfies the pleading particularity requirements . . . ." Webb Decl. at ¶ 7. Having reviewed the RICO statement, the Court disagrees.

The vast majority of the RICO statement is simply a reiteration of what was contained in the SACC. A few examples suffice to make the point. Paragraphs 24 and 25 of the SACC state:

> 24. Counter claimants allege that Kochisarli affirmatively represented to FMB and Griffin that Kochisarli would sell his real property located at 39-40 30th Street, Long Island City, New York to FMB for $1,600,000. FMB agreed to pay said purchase price as follows (a) $169,000 down payment, and subject to the terms of lease/purchase option; (b) acceptance of title subject to first mortgage held by Eastern Savings Bank ["Eastern"] for $875,000, and the second mortgage held by Hal Tenoso for $350,000; and ©) [sic] by execution and delivery to Kochisarli by FMB, or its assignee of a note secured by a purchase money mortgage thereon (N/A) and (d) balance in cash at closing. . . .
> 25. Counter claimants allege that Kochisarli affirmatively represented to FMB and Griffen that Kochisarli would lease his entire interests in the real property located at 39-40 30th Street, Long Island City, New York to FMB for a seven year [7] term,

> paying a monthly lease option of $15,000.00, which said monthly
> payment would be accrued and applied towards the down payment
> of the purchase on said real estate. Said option is specifically
> referenced within both the real property lease agreement and within
> the buy sell agreement previously executed between FMB
> Holdings, LLC and Kochisarli.

SACC (Docket no. 145) at ¶¶ 24-25. Page 5 line 17 through page 6 line 7 of the RICO Case Statement (Docket No. 146) is the same except for two minor changes. The first change is that the RICO Case Statement omits the material indicated by the ellipse in paragraph 24 of the SACC as indicated above. Second, the words "counter claimants allege that" in the beginning of paragraph 25 of the SACC are omitted from the RICO Case Statement. Similarly, page 14 line 19 through page 15 line 3 of the RICO Case Statement repeats word for word paragraphs 20 and 21 of the SACC. The RICO Case Statement adds little, if any, clarity, to the SACC. Indeed, in his motion for reconsideration, Webb fails to address in any detail how, even if read together, the SACC and RICO Case Statement satisfy the relevant pleading requirements.

Nor is the Court persuaded that, as claimed by Mr. Webb, the SACC is substantially different from the ACC. The Court has once again compared the SACC to the ACC and once again finds it substantially the same. The inclusion of several exhibits and seven new paragraphs does not make the approximately twenty-eight pages of allegations in the SACC substantially different from the approximately twenty-seven pages of allegations in the ACC.

Accordingly, upon reconsideration, the Court adheres to its earlier determination that sanctions are appropriate.

### III. *The Amount of Sanctions.*

A court has considerable discretion in determining the amount of sanctions. *Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 122 (2d Cir. 1987). It may, in exercising that discretion, "award only that portion of the [opposing party's] attorney's fee thought reasonable to serve the sanctioning purpose of the Rule." *Id.* at 123. The Court has reviewed Plaintiff's submission detailing the costs incurred in the preparation of the motion to dismiss and Mr. Webb's objections thereto. Although Plaintiff requests $11,118.75 in attorneys' fees and $509.74 in costs for a total of $11,628.49, the Court finds that sanctions in the amount of $4,000.00 in attorneys' fees and $366.49 in costs, for a total of $4,366.49 is appropriate in this case. In reaching this conclusion, the Court considered several factors.

First, the Court finds that the hourly rates sought for attorneys – $325.00 and $400.00 – are high in comparison with the rates charged by other practitioners in this geographical area with similar credentials and experience. *Cf. Warner Bros. v. Ferrandino,* Civil Action No. 06-0586 (E.D.N.Y. October 31, 2006) (finding rates between $150 and $300 per hour reasonable for the Eastern District of New York); *Van Der Zee v. Greenidge,* 2006 WL 44020, *4 (S.D.N.Y. 2006) (finding attorneys' fees based on rates between $150 and $350 per hour to be reasonable for copyright infringement). In determining a reasonable hourly rate, a court considers the rate for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Miele v. New York Teamsters Conf. Pens. & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987). A court may rely on its own knowledge of hourly rates charged by private firms to determine what reasonable rates are in the relevant community. *Van*

*Der Zee*, 2006 WL 44020, *4. This Courts finds that a rate of $200 per hour is a reasonable rate in this District for attorneys of comparable skill.

Second, the Court finds that a reduction in the number of hours sought is warranted. Plaintiff's application does not specify that the time records were made contemporaneously. Moreover, as Plaintiff acknowledged in its Memorandum of Law in Support of the Motion to Dismiss the SACC, "[a]ll of the pleading deficiencies delineated in Plaintiff's prior motion papers remain present. Evidence of this fact is that the instant brief includes each and every legal point set forth in Plaintiff's last brief, a year ago." Plaintiff's Mem. [Docket No. 170-1] at p. 2. The repetitive nature of the motion, together with the fact that some of the claimed time is not appropriately includable (for example conferences between attorneys and organization of files), warrants a reduction in the number of hours sought. Finally, the Court has considered the fact that the conduct of both parties, as noted in this Court's March 21, 2006 Memorandum at 18, has been less than sterling. While Plaintiff has submitted records for 38.25 hours, the Court finds that 20 hours is a reasonable number of hours. Accordingly, the Court finds $4,000.00 in attorneys' fees is reasonable to serve the sanctioning purpose of Rule 11.

The Court finds that it is appropriate to award costs in the amount of $366.49. With respect to the costs sought, there is no indication as to the per page charge for photocopying. Accordingly, the Court reduced the amount sought for photocopying and postage to $145.00. *Cf. U.S. for Use and Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridan Constr. Corp.,* 95 F.3d 153, 173 (2d Cir. 1996) (affirming reduction in claimed photocopying costs where costs were not itemized and no justification was offered for number of copies). The Court finds it is appropriate to award the costs of the Public Access Fee for Electronic Court Records ($46.64) and the charge for overnight delivery to the Court ($14.75). The Court will also award the

$160.10 sought for electronic research. Whether to include the cost of electronic research in a Rule 11 award lies within the discretion of this Court. *Cf. id.* (district court did not abuse discretion in disallowing electronic computer research costs sought as part of sanctions award as "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"). The Court shall allow the amount sought on the theory that computerized research presumably saved time by making research more efficient. *See Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany,* 369 F.3d 91, 97 (2d Cir. 2004) ( holding charges for online research should be included as part of a fee award under a fee-shifting statute and distinguishing *Evergreen* on grounds that Rule 11 is not a fee shifting mechanism and therefor whether to award electronic research costs lies within the discretion of the district court).

## *CONCLUSION*

In conclusion, Mr. Webb's motion for reconsideration of the March 21, 2006 Order only insofar as it imposed sanctions against him is GRANTED. Upon reconsideration, the Court adheres to its earlier decision to impose sanctions against Mr. Webb. The Court sanctions Mr. Webb in the amount of $4,366.49. Counsel for Plaintiff is directed to serve a copy of this Memorandum & Order upon Mr. Webb. Mr. Webb is directed to remit said amount to the order of Plaintiff within thirty days of the date of service of this Order upon him.

**SO ORDERED.**

Dated: Central Islip, N.Y.
      March 30, 2007                                       /s/
                                                                    Denis R. Hurley
                                                                    United States District Judge