UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ZEKI KOCHISARLI,

                                   Plaintiff,

                                                              **MEMORANDUM & ORDER**

            - against -                                       02-CV-4320 (DRH) (MLO)


HAROLD J. "HAL" TENOSO, ALAN
MORRISON HAY, FRANCES GRIFFIN,
FMB HOLDINGS LLC,

                                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**APPEARANCES:**

**QUADRINO & SCHWARTZ, P.C.**
Attorneys for Plaintiff
666 Old Country Road, 9th Floor
Garden City, NY 11530
By:  Harold J. Levy, Esq.

**TRENK, DiPASQUALE, WEBSTER, DELLA FERA & SODONO P.C.**
Attorneys for Defendant
100 Executive Drive, Suite 100
West Orange, NJ 07052
By:     Richard D. Trenk, Esq.,
        Henry M. Karwowski, Esq.


**HURLEY, Senior District Judge:**

### *INTRODUCTION*

        Plaintiff Zeki Kochisarli ("Plaintiff" or "Kochisarli") brought the present action against

Defendants Harold Tenoso ("Tenoso"), Alan Morrison Hay ("Hay"), Frances Griffin ("Griffin"),

and FMB Holdings ("FMB")[1] following his purported default on a loan agreement, seeking to

have the loan declared void.  Defendant Tenoso asserted a counterclaim seeking all amounts

---

[1] Hay, Griffen and FMB have defaulted in this action.

owed under the Loan Agreement, Note, and Mortgage.   This case was tried to the Court in June

and July 2007.  At the time of the trial, Plaintiff's sole claim against Tenoso was for fraud, all

other claims having been previously dismissed .  At the conclusion of Plaintiff's case, Tenoso

moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c). The

Court issued findings of fact and conclusions of law from the bench dismissing the fraud claim.

Familiarity with those findings is presumed.   In this decision, the Court issues additional

findings of facts and conclusions of law addressing Tenoso's counterclaim.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

### The Loan Agreement, Note and Mortgage

1.      On or about April 23, 2001, Plaintiff and Tenoso entered into a Loan Agreement pursuant

to which Tenoso lent Plaintiff the sum of $350,000.00.

2.      In connection with the Loan Agreement, and on April 23, 2001, Plaintiff executed a

Mortgage Note (the "Note") in favor of Tenoso.

3.      Under the terms of the Note, Plaintiff agreed to pay the sum of Three Hundred Fifty

Thousand ($350,000.00), plus interest as provided therein.

4.      With respect to the payment of interest, the Note provides:

> Interest shall be due and payable on the unpaid balance of the
> Principal Indebtedness. [Kochisarli] shall prepay six months in the
> amount of Twenty-Six Thousand Two Hundred Fifty ($26,250)
> computed at the rate of fifteen percent (15%) per annum.  The
> prepaid interest is nonrefundable and shall belong to payee in the
> event [Kochisarli] prepays this Note prior to the expiration of its
> terms.  Such prepaid interest shall be delivered to the Payee
> together with the delivery of this Note.  In addition, [Kochisarli]
> shall pay interest in thirty (30) consecutive monthly installments
> due and payable on the tenth (10th) day of each calendar month,
> with the first such monthly installment being due and payable on

June 10, 2001 and the last such installment being due and payable on November 10, 2003. The initial interest rate payable by [Kochisarli] under this Note shall be at the rate of fifteen (15%) per annum . . . .

5.      The Note also provides for a late payment penalty as follows:

If any sum payable under this Note is not paid within ten (10) days after the date on which it is due, [Kochislari] shall pay to [Tenoso] upon demand an amount equal to 5% of such unpaid sum as a late payment charge, such late charge to be immediately due and payable without demand by Payee.

6.      The Note provides, with respect to default and acceleration:

Upon the occurrence of any of the following ("Events of Default"), the entire unpaid principal balance and accrued interest due under this Note shall accelerate and become immediately due and payable:

(i)      The failure to timely pay any installment due on this note, and such installment shall continue to remain unpaid for ten (10) days from its due date.

(ii)     The occurrence of any event of default under the Mortgage made of even date herewith which is not cured within any applicable grace period as may be provided therein;

(iii)    The filing by or against [Kochislari] of any insolvency proceedings under federal or state law, except that the same shall not become an Event of Default if within sixty (60) days from the date of filing, [Kochislari] moves successfully to dismiss such proceedings;

(iv)     In the event that [Kochislari] becomes insolvent or has suspended transaction of its usual business;

(v)      The appointment of a custodian, receiver, trustee, or liquidator for [Kochislari] at the instance of any governmental authority;

In the case of any event of default other than [Kochislari's] failure to timely pay any amount due and owing under this Note, [Tenoso] shall furnish [Kochislari] with written notice thereof. Notwithstanding anything herein to the contrary, [Kochislari] shall be granted a grace period of 30 days after receiving notice from

[Tenoso] in which to remedy any event of default other than a
monetary default.

7.     The Note states that it shall be construed in accordance with the laws of the State of New York.

8.     The Note provides that "In the event it becomes necessary for [Tenoso] to take any legal action to enforce any of its rights hereunder, [Tenoso] shall be entitled to receive from [Kochislari] [Tenoso's] reasonable attorney [sic] fees and reasonable out of pocket disbursements unless [Kochislari] is the successful party in such legal action.

9.     As security for the repayment of the Note, Plaintiff executed a mortgage (the "Mortgage") in favor of Tenoso on certain real property known as 39-40 30th Street, Long Island City, New York (the "Property").

10.     The Mortgage provides in pertinent part: "If the Mortgagee declares that the Mortgagor is in default, the Mortgagor shall immediately pay the full amount of all unpaid principal, interest, other amounts due on the Note and this Mortgage and the Mortgagee's costs of collection and reasonable attorney [sic] fees."

11.     The Mortgage also states that Kochisarli grants Tenoso an option to purchase the Property for $1,250,000.00 in the event of default.

**The Default and Plaintiff's Bankruptcy**

12.     On April 10, 2002, Plaintiff failed to make a required interest payment.

13.     On April 21, 2002, Tenoso issued to Plaintiff a default notice in which he demanded payment.

14.     On April 22, 2002 Plaintiff filed a petition under Chapter 11 of the United States

         Bankruptcy Code.

15.     On the date of the filing of the bankruptcy petition Kochislari owed Tenoso, the following
on the Note:

| | |
|---|---|
| Principal | $350,000.00 |
| April Interest | $ 4,375.00 |
| Penalty | $ 218.75 |
| Prepaid Interest | ($ 26,250.00) |
| | |
| Total | $328,343.75 |

16.     Under the terms of the Note, interest in the amount of $4,375.00 accrues each month,

         together with a late fees of $218.75, for a total of $4593.75.

**Plaintiff's Offers**

17.     In or about August 2002, Kochislari made what he labels as  two "settlement

         offers/tenders."  The first offer was to pay Tenoso $350,000.00.  The second offer was to

         pay Tenoso $400,000.00 "in full and final payment of all amounts due and owing"

         Tenoso. At the time of the offers, Kochislari had commenced this action against Tenoso.

18.     Tenoso rejected these offers claiming he was owed approximately $500,000.00 on the

         loan (including interest for the remaining term of the loan) plus the value of the option on

         the property.

19.     Kochisarli's August 2002 offers did not stop the accrual of interest.  First, despite

         counsel's use of "settlement offers/tenders," they were mere offers to pay.  There is no

         evidence that the actual sums were tendered to Tenoso.  *See Home Savings of America v.*

         *Isaacson*, 240 A.D.2d 633, 633, 659 N.Y.S.2d 94 (2d Dept. 1997) (valid tender by

         mortgagor requires actual proffer of all mortgage arrears); *Jamaica Savs. Bank v. Sutton,*

42 A.D.2d 856, 857, 346 N.Y.S.2d 847, 849 (2d Dept. 1973) (holding that "a valid tender requires not only readiness and ability to perform but actual production of the thing to be delivered, in this case, the mortgage payment arrearages"); 83 N.Y. Jur. 2d Payment and Tender § 118 ("tender is generally defined as an unconditional offer of payment, consisting in the actual production, in current coin of the realm, of a sum not less that the amount due on a specific debt or obligation"); 28 Williston on Contracts § 72:29 (4th ed.) (valid tender requires an unconditional offer to perform with a manifest ability to carry out the offer; production of the subject matter of the tender; the amount tendered must not be less than what is due and if greater, there must be no demand for a return of the excess). Second, a tender must be unconditional. *See Knab Bros. Inc. v. Town of Lewiston*, 58 A.D.2d 1016, 1017, 397 N.Y.S.2d 45 (4th Dept. 1997). Kochislari's offers were conditioned upon the payment being in full and final payment of all amounts owed, which would include the option to purchase the Property. Finally, any claim of tender was waived by the failure of Kochisarli to raise it as a defense to Tenoso's counterclaim. *See Mooney v. City of New York*, 219 F.3d 123, 127 n.2 (2d Cir. 2000) (a failure to plead an affirmative defense generally results in the waiver of that defense and its exclusion from the case).

20.     Tenoso's refusal to accept these offers was not wrongful so as to stop the running of interest. As noted above, there was no actual tender in this case but merely an offer to settle. *Northerly Corp. v. Hermett Realty Corp,* 19 A.D.2d 594, 240 N.Y.S.2d 790 (1st Dept. 1963), *aff'd*, 13 N.Y.2d 1137, 247 N.Y.S.2d 132 (1964), the sole New York case cited by Plaintiff for the proposition that if the failure to pay is due to the conduct of the

creditor, which is improper or which prevents the debtor from paying, interest is suspended during the time the debtor is prevented from making payment, is distinguishable. That case involved an actual tender, which tender relieved the party of interest charges. Further, the Mortgage did in fact contain a provision purporting to grant Tenoso an option to purchase the Property at a specified price in the event of default and Tenoso's insistence on recompence for that option cannot be deemed so wrongful so as to deprive him of the benefit of interest on the principal amount as to agreed to by Kochisarli in the Note.

**The Sale of the Property**

21. On October 25, 2002, the Bankruptcy Court entered a "Revised and Amended Order Authorizing Sale of Debtor's Real Property Under Bankruptcy Code § 363(b) (the "Sale Order").

22. The Recitals of the Sale Order provides in relevant part:

> At the August 22, 2002 hearing, the Court began by having the Debtor respond to Tenoso's objections by oral argument. After a short negotiation, Tenoso withdrew his objection to the sale, Ganesh's bid was confirmed and the parties agreed on the record that, upon closing of the sale of the property to Ganesh, the Debtor would deposit into an interest bearing escrow account with the law firm of Thaler & Gertler, LLP, as escrow agent, the sum of $600,000.00 from the net proceeds of the sale to which only Tenoso's previously contested lien would attach without prejudice to the Rights and Remedies of any of the Parties (collectively, rights of the parties), with a subsequent determination to be made how much, if any, of the $600,000.00, plus accrued interest, in the account should be paid to satisfy Tenoso's alleged secured claim by a court of competent jurisdiction or after notice and hearing before this Court upon a filed stipulation among the parties.

23.  In the Sale Order, the Bankruptcy Court (1) granted Kochisarli's motion to sell the Property "free and clear of liens, with liens to attach to the proceeds under 11 U.S.C. § 363(b)"; (2) ordered that the transfer of title to the property "be free and clear of all liens, encumbrances, claims or mortgages, if any. The liens, encumbrances, claims, mortgages, if any, shall attach to the net proceeds of the sale under 11 U.S.C. § 363 and Bankruptcy Rules 2002, 6004 and E.D.N.Y. LBR 6004-1 . . . ."

24.  Under the terms of the Sale Order, Tenoso's liens and claims, including the claims for accruing interest, attached to the proceeds of the sale of the Property. Granting a secured creditor a replacement lien on the proceeds of sale is an often used method of providing adequate protection to a lienholder whose security is sold in bankruptcy free of their lien. *See* John Collen, *What Do the Subsections of Section 363(f) Really Mean? A Primer on Selling Free and Clear of Interests,* 6 J. Bankr. L. & Prac. 563, 565 (1997). A feature of a secured claim is that the value of the collateral, and hence the size of the claim, may fluctuate. Section 506(b) of the Bankruptcy Code allows for the receipt of interest, fees, and costs when a secured claim is secured by property that has a value that exceeds the amount of the claim. Therefore adequate protection will permit a secured claim to accrue interest to the same extent that the original collateral would have supported. *Id.*

25.  Pursuant to the Sale Order, $6,750.00 was paid to Tenoso on October 22, 2002.

26.  By Order dated May 30, 2003, the Bankruptcy Court dismissed Kochisarli's bankruptcy case and ordered that notwithstanding the dismissal "Thaler & Bertler, Esq. shall continue to hold in its attorney trust account the sum of $600,000.00 plus all accrued interest pending a determination of Hal Tenoso's lien claim in the United States District Court for

the Eastern District of New York in *Kochisarli v. Tenoso, et al.,* CV-02-4320 or any other competent court of jurisdiction."

27. Plaintiff contends that the deposit of $600,000 into the Thaler & Bertler escrow account stopped the accrual of interest at the contractual rate on the principal balance of the loan and in support of that contention relies upon *Warren v. Banning*, 140 N.Y. 227, 229 (1893). The Court finds *Warren* to be distinguishable. *Warren* was an action to recover part of the purchase price paid on the purchase of real estate. The plaintiff obtained an order directing the defendant to deposit the money paid in court. The *Warren* court held that the plaintiff, having made claim to the particular fund and having procured an order enjoining the defendant from using the money, could not obtain interest on the money in an amount greater than what was earned. Here, in contrast, the Order of the Bankruptcy Court preserved all rights and remedies of Tenoso's lien. Plaintiff does not cite, and the Court has not found, a case that construes "without prejudice to the Rights and Remedies of any of the Parties" to mean "with prejudice to contractual interest accruing."

28. *Manufacturer's & Traders Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 838 N.Y.S.2d 806 (2007), another case relied on by Plaintiff, is also distinguishable. In *Manufacturer's*, subcontractors on a construction project asserted claims to a fund which a general contractor had deposited with an escrow agent. The escrow agent then commenced an interpleader action which resulted in the funds being deposited into court. In that interpleader action it was determined that the funds should be returned to the general contractor. The New York Court of Appeals held that an award of interest was not authorized by the New York Civil Practice Law and Rules against unsuccessful

claimants (i.e. the subcontractors) in an interpleader action because there was no sum awarded against the subcontractors. *Id.* at 588-90. Here, of course, there is no interpleader action and a sum is being awarded against Plaintiff.

29.    Nor is the Court persuaded by Kochisarli's argument that the money was placed in escrow and removed from Kochislari's possession solely and exclusively by the acts of Tenoso and held for his protection and if Kochisarli had use of the money he could have invested it and realized a gain of between 25% to 75 %. It appears from the record that the $600,000.00 was placed in escrow as a result of the parties' agreement resolving Tenoso's objections to the sale of the Property. Both parties benefitted from the agreement. Kochisarli benefitted from the sale of the Property being approved and the first mortgage thereon being paid off. Tenoso benefitted by having his valid lien on the Property attach instead to the $600,00.00 so deposited. Under the circumstances, there is no reason to deny Tenoso the interest he is entitled to under the Note duly agreed to and executed by Kochisarli. Indeed, Plaintiff's argument ignores the fact that Tenoso did not have use of the funds while they were in escrow.

30.    The Court concludes that the deposit of $600,000.00 into the Thaler & Bertler escrow account did not stop the accrual of interest at the contractual rate on the principal balance of the loan.

**Principal and Interest Due and Owing**

31.    As of July 21, 2007, the amount of interest and late fees due and owing on the principal amount of the Note was $266,437.50, calculated as follows:

58 months (64 months of interest due from April 10, 2002 to July 10, 2007 less six months of pre-paid interest) x $4,593.75 ($4,375.00 interest plus $218.75 late fees) = $266,437.50.

32.    As of July 21, 2007, the amount of principal, interest and late fees owed on the Note by Kochislari to Tenoso was $609,687.50, calculated as follows:

| | |
|---|---|
| Principal: | $350,000.00 |
| Interest and late fees: | $266,437.50 |
| (October 22, 2002 payment) | ($6,750.00) |
| Total | $609,687.50 |

33.    By Order dated August 8, 2007, this Court authorized Thaler & Bertler, LLP to disburse the amount of $350,000.00 payable to Tenoso's counsel, with all other proceeds to continue to be held pending further order of this Court.

**Attorneys' Fees and Disbursements**

34.    Having prevailed on his claim for amounts owed on the Note, Tenoso is entitled to reasonable attorneys' fees and disbursement under the terms of the Note. He seeks to recover the following amounts through June 30, 2007[2]:

| Firm | Attorneys' Fees | Disbursements |
|---|---|---|
| Trenk, Di Pasquale, Webster, Della Fera & Sodono, P.C (and its predecessors)[3]("TDW") | $240,951.50 | $15,026.54 |

---

[2] Tenoso does not waive his right to recover attorneys fees incurred after June 30, 2007, as calculations are through that date.

[3] In or about April 2002, Tenoso retained Rabinowitz, Trenk, Lubetkin & Tully, P.C. (the "Firm"). In 2003, the Firm became known as Booker, Rabinowitz, Trenk, Lubetkin, Tully, DiPasquale & Webster, P.C.. In 2006, it became known as Rabinowitz, Trenk, Lubetkin, Tully, DiPasquale & Webster, P.C. Effective January 1, 2007, the Firm changed its name to Trenk, Di Pasquale, Webster, Della Fera & Sodono, P.C. In referring to TDW, the Court includes these predecessor firms.

| Kenneth R. Cohen, Esq. | $  2,990.00 | N/A |
| Ochs & Goldberg, LLP | $ 10,833.00 | $    95.43 |
| Total | $254,774.50 | $15,121.97 |

Tenoso also seeks the sum of $6,835.11 "in additional costs associated with enforcement of the Note, including the cost of my travel between Florida and Central Islip, NY for the trial in June 2007, hotel accommodations at The Residence Inn in Hauppauge, NY for my attorneys and myself during the trial in June 2007, travel and hotel for my deposition in October 2004, trial exhibits produced at Kinkos and the Evidence Store, postage and related expenses."

35.  Kochisarli objects to the amounts sought on various grounds including: the rates sought are unreasonable; fees are sought for unidentified individuals; the amounts expended in the bankruptcy and appeals from the bankruptcy court prolonged that matter and were of no benefit; fees are sought for secretarial duties and travel time; the use of two attorneys at trial was unreasonable; and fees sought for Och & Goldberg are unreasonable because no explanation of the need for a second firm is provided.

36.  The Second Circuit uses the "presumptively reasonable fee," known as the "lodestar figure" in other circuits, to determine reasonable attorneys' fees.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, --- F.3d --- , 2008 WL 961313, at *7 (2d Cir. 2008); *Cruz v. Local Union No.3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1149 (2d Cir. 1994).  The presumptively reasonably rate is determined by "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill*,

2008 WL 961313 at * 8-9. In reviewing a fee application, the court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. *See Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994). Any hours which are "excessive, redundant, or otherwise unnecessary" should be excluded. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). The party seeking attorneys' fees bears the burden of supporting its claim by accurate, detailed, contemporaneous records. *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The reasonable rate is usually calculated according to the prevailing rates in the district in which the court sits and such prevailing rate may be based on evidence presented or a judge's own knowledge of hourly rates charged in the district. *See Arbor Hill,* 2008 WL 961313 at * 8.; *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989); *Polk  v. N. Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). A district court may, however, adjust the base hourly rate to account for a plaintiff's reasonable decision to retain out-of district-counsel. *Arbor Hill*, 2008 WL 961313 at * 8. When "deciding whether to use an out-of district hourly rate in its fee calculation" the district court should look at "what a reasonable, paying client would pay," to have the case litigated efficiently and "use that rate to calculate the presumptively reasonable fee. *Id.* at *9.

A. Reasonable Rate for TDW

37.    Tenoso's principal counsel, the firm of Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C ("TDW"), has its offices in West Orange and Newark, New Jersey.

38. In calculating the presumptively reasonable fee, "a district court may use an out-of-district hourly rate - or some rate in between the out-of district rate sought and the rates charged by local attorneys - in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill,* 2008 WL 961313 at *8. However, a court should presume "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted - albeit only in the unusual case- if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstance as they would be reckoned by a client paying the attorney's bill." *Id.*

39. "Overall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants." *Cruz v. Henry Modell & Co., Inc.*, 2008 WL 905351 (E.D.N.Y. 2008). More particularly, for actions in this District involving mortgages and promissory notes attorneys' fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners. *See, e.g., Counrtywide Home Loan v. Brown*, Civil Action No 03-0021 (E.D.N.Y. Nov. 9, 2005) (Findings of Fact and Conclusions of Law and Order approving rates of $150 to $200).

40. Here there is no evidence that would rebut the presumption that a reasonable, paying client would either hire counsel from within this district or at least counsel whose rate are consistent with those charged locally. Accordingly, the Court shall apply rates consistent with those charged in this District, as opposed to the higher rates charged by TDW.

-14-

41.     The two principal TDW attorneys assigned to this matter were Richard Trenk and Henry

        Karwowski, both members of the firm.  Mr. Trenk was admitted to practice in New

        Jersey in 1982 and his current normal hourly rate is $450.00.  He is the former President

        of the Essex County Bar Association and concentrates in the areas of litigation,

        debtor/creditor and governmental law.  Mr. Karwowski's normal current billing rate is

        $350.00 per hour and he was admitted in 1996.  He is a former law clerk to the Honorable

        Rosemary Gambardella, former Chief Judge of the United States Bankruptcy Court for

        the District of New Jersey, has written for the American Bar Institute Journal and the

        New Jersey Law Journal and has eleven years experience in debtor/creditor issues.

        Based on their experience and qualifications and applying rates consistent with those

        charge locally for similar cases, the Court concludes the $250.00 per hour for Mr. Trenk

        and $200.00 per hour for Mr. Karwowski are the rates a reasonable, paying client would

        pay.

42.     The billing records submitted by TDW reveal that other persons have also worked on this

        matter.   No information is provided as these individuals who are identified only as

        "JHR", "MET", "SFH", "JIR", "PLGL", and "MMA" (collectively "Others").  Given the

        lack of information for these individuals, the Court finds that a reasonable rate for them is

        $100.00 per hour.

        B.  Reasonable Hours for TDW

43.     Having determined the reasonable rate for the attorneys at TDW, the Court must now

        determine the reasonableness of the number of hours sought, to wit 841.85.  Of the

841.85 hours sought, 187.9 were billed by Mr. Trenk, 526.7 were billed by Mr. Karwowski and 127.25 were billed by Others.

44. In determining whether the number of hours spent by counsel was reasonable, a court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonablenees of the hours spent in a given case." *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

45. As noted above, Plaintiff argues that the number of hours should be reduced because it was unnecessary for two attorneys to attend the trial. The Court declines to do so. As the Second Circuit has noted:

> [P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. Nor are counsel forbidden from receiving fees for background research. Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

*Carey*, 711 F.2d at 1146. Here, based upon the Court's observations at trial, it was reasonable for Tenoso to have two attorneys representing him at trial, particularly in light of the fact that Kochisarli made the same decision in being represented by two attorneys at trial. *See Simmons v. N.Y. City Transit Auth.*, 2008 WL 630060, at *7 (E.D.N.Y. Mar. 5, 2008) (declining to reduce attorneys' fee award because of use of two attorneys as it was "appropriate for the plaintiff to have two attorneys representing her at trial,

particularly in light of the fact that the defendant had two attorneys representing it throughout [the] action").

46. Nor is it appropriate to deny fees for the removal of this action from state court to this court. The action was properly removed. That the action was appropriately venued in state court does not obliterate Tenoso's right to remove the action to federal court.

47. Plaintiff also seeks the elimination of all time billed for travel. While the Court declines to eliminate all travel time, travel time is appropriately reimbursed at one-half of the determined hourly rate. *See Simmons,* 2008 WL 630060, at * 5.

48. Plaintiff also objects to all the hours spent with respect to Kochisarli's bankruptcy except the minor amounts related to the proof of claim because (1) the hours did not benefit Tenoso and merely served to prolong the bankruptcy, (2) the appeals from the Bankruptcy Court were summarily dealt with by this Court, (3) it includes time regarding Syosset property in which Tenoso had no interest or claim. While the Court believes some reduction is appropriate, it rejects the contention that all hours except those devoted to the proof of claim should be eliminated. As a secured creditor, it was not inappropriate for Tenoso to seek to lift the bankruptcy stay or to object to the sale of the Property without adequate protection for his interests. On the other hand, some of the time spent does seem to this Court unnecessary and/or excessive.

49. The Court finds that Kochisarli's objection to time spent on matters specific to Griffen and Hays is well taken. Neither Grifffen nor Hays were signators or guarantors of the Note and/or Mortgage and therefore an action against them could not be to enforce the

Note. That Tenoso may have had some other claim against them for their involvement in the loan to Kochisarli does not entitle Tenoso to fees therefore.

50. It also appears to this Court that some of the attorney time was spent on noncompensable secretarial duties such as the preparation of cover letter and affidavits of service.

51. As set forth above, some of the hours claimed by TRW should be eliminated. "Where, as here, the application for fees is voluminous, the Court may order an across-the board percentage reduction in compensable hours." *LaBarbera v. Empire State Trucking, Inc.*, 2008 WL 746490, at * 5 (E.D.N.Y. 2007) (citing Second Circuit cases). Here, the Court finds that a ten percent (10%) reduction in TDW's billed hours is sufficient and appropriate.

52. Accordingly, Tenoso is entitled to attorneys' fees for the work performed by TDW through June 30, 2007, as follows:

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Trent | $250 | 169.10 | $ 42,275.00 |
| Karwowski | $200 | 474.00 | $ 94,800.00 |
| Others | $100 | 114.50 | $ 11,450.00 |
| | Total Fees for TDW | | $148,525.00 |

C. Costs for TDW

53. In addition to attorneys' fees, Tenoso seeks out of pocket disbursements incurred by TDW in the amount of $15,026.54. Plaintiff objects to this amounts to the extent it includes fees for subpoenas, as Tenoso did not depose anyone, and for pro haec vice admission to this Court and the Bankruptcy Court. The Court finds the objections valid.

With respect to the subpoena fees, Tenoso has not provided any information that the individuals were in fact deposed. The pro haec vice fees will be disallowed given Tenoso's failure to demonstrate that his retention of an out-of-district attorney was reasonable under the circumstances. Accordingly, the Court shall deduct $120.00 for disbursements in connection with pro haec vice admissions and $424.40 in subpoena fees. In addition, the Court shall deduct $13.01 for "deliveries to Bergen County Sup. Ct." as this amount was either billed in error or, more probably, was a cost incurred in connection with obtaining certificates of good standing in connection with the pro haec vice admissions. The Court finds the other disbursement amounts reasonable and therefore awards $14,469.13 in disbursements.

D. Fees for Kenneth R. Cohen, Esq.

54. Tenoso also seeks $2,990.00 in legal fees incurred by Kenneth R. Cohen, Esq. consisting of 11.8 hours at rates ranging from $250.00 to $300.00 per hour.

55. No information is provided for Mr. Cohen. The Court does not know, for example, how long he has been admitted or his areas of practice. Given the dearth of information, the Court is compelled to limit his compensation rate to $100.00 per hour, finding that to be the appropriate rate.

56. From the 11.8 hours sought, the Court excludes 1.1 for time prior to April 10, 2002, the date of default. The Court also excludes .8 hours incurred in 2007 as unnecessary and excessive.

57. Accordingly, Tenoso is entitled to recover $990.00 (9.9 hours at $100.00 per hour) for attorneys' fees incurred by Kenneth R. Cohen.

E. Fees for Ochs & Goldberg

58. Tenoso seeks $10,833.00 for fees incurred by Ochs & Goldberg, LLP. ("O&G") in connection with Kochisarli's bankruptcy. The Court declines to award any fees for O & G. No explanation is provided as to why a second firm was necessary for the bankruptcy in view of Mr. Trent's and Mr. Karwowski's experience and concentration in the area of debtor/creditor law. Accordingly, the Court finds these fees excessive and no amounts shall be awarded therefore.

F. Tenoso's Disbursements

59. As noted above, Tenoso seeks the sum of $6,835.11 "in additional costs associated with enforcement of the Note, including the cost of my travel between Florida and Central Islip, NY for the trial in June 2007, hotel accommodations at The Residence Inn in Hauppauge, NY for my attorneys and myself during the trial in June 2007, travel and hotel for my deposition in October 2004, trial exhibits produced at Kinkos and the Evidence Store, postage and related expenses." No itemization of the amounts spent has been provided. Accordingly, the Court declines to award Tenoso any amount for these disbursements.

**Summary**

60. The Court concludes that Tenoso is entitled to recover from Kochisarli as follows:

| | |
|---|---|
| Principal, Interest, and Late Fees as of 7/21/07 | $609,687.50 |
| TDW Attorneys' Fees and Costs through 6/30/07 | $162,994.13 |
| Cohen Attorneys' Fees | $ 990.00 |
| Total | $773,671.63 |

*CONCLUSION*

For the reasons set forth above, Tenoso is entitled to recover from Kochisarli the amount of $ 773,671.63.  To the extent that Tenoso seeks attorneys' fees and disbursements incurred after June 30, 2007, he is directed to submit an application therefor, using the rates set forth herein, within seven (7) days of the date of this Memorandum and Order.  Kochisarli shall then have five (5) days to file any objections thereto.  In addition to addressing additional fees, the parties' submissions shall address the effect of this Court's Order, dated August 8, 2007 (authorizing Thaler & Bertler, Esq. to disburse the amount of $350,000 payable to Tenoso's counsel), on the judgment to be entered.

**SO ORDERED.**

Dated: Central Islip, N.Y.
        April 24, 2008                              _____/s/_____
                                                    Denis R. Hurley
                                                    Senior District Judge